## THE COMMERCIAL TRAVELERS MUTUAL ACCIDENT ASSOCIATION v. SPRINGSTEEN.

[No. 2,878.    Filed January 11. 1900.]

ACCIDENT INSURANCE.—*Notice of Injury.—Waiver.—Pleading.*— An allegation in a complaint on an accident insurance policy that plaintiff gave defendant due notice of his injury at the home office of the company, "and that said notice was accepted by the defendant as sufficient notice, and without objection," is a sufficient averment of a waiver of a provision in the policy requiring a written notice to be given to the association at its home office within ten days after the injury.    *pp. 658-660.*

SAME.—*Interrogatories to Jury.*—Answers to interrogatories, in an action on an accident insurance policy conditioned that it should not cover injuries from voluntary exposure to unnecessary danger, showing that plaintiff was injured by running into a wagon while riding a bicycle against a heavy wind, and that he could have avoided running into the wagon if he looked ahead, but that he was not conscious of existing danger when he received the injury, and that he did not knowingly and intentionally assume a risk, are not in conflict with a general verdict for plaintiff.    *pp. 660, 661.*

SAME.—*Notice.—Waiver.—Evidence.*—Where a complaint, in an action on an accident insurance policy, sufficiently averred a waiver of a provision of the policy requiring a written notice of injury to be given to the secretary of the association at its home office, the testimony of plaintiff as to an alleged conversation had by him with the secretary wherein he gave defendant notice of his injuries was properly admitted in evidence.    *pp. 661, 662.*

SAME.—*Total Disability.—Instruction.*—An accident insurance policy contained a provision that no claims should accrue under the contract unless the injury should, "independently of all other causes, immediately and wholly disable the insured from performing any and every kind of business pertaining to his occupation," etc. *Held,* that the court properly instructed the jury that plaintiff could recover if he was disabled to the extent that he could not do any and all kinds of business pertaining to his occupation.    *pp. 662-672.*

SAME.—*Voluntary Exposure.—Negligence.*—The fact that plaintiff was guilty of negligence contributing to his injury will not defeat a recovery on an accident insurance policy conditioned that it should not cover injuries received from voluntary exposure to unnecessary danger, where the jury found that plaintiff had no knowledge of the danger.    *pp. 672, 673.*

From the Marion Superior Court. *Affirmed.*

*C. E. Barrett*, for appellant.

*J. W. Noel* and *F. J. Lahr*, for appellee.

COMSTOCK, J.—This action was brought upon an insurance policy issued by the appellant, a mutual accident association organized under the laws of Indiana, to the appellee. The policy was issued November 1, 1895. Appellee received the injury for which he sues June 21, 1896, while the policy was still in force. The complaint was in four paragraphs. The first, third, and fourth paragraphs alleged that written notice of appellee's injury had been given to the association according to the terms of the policy. As it is not claimed that such written notice was ever given, these paragraphs are not discussed by appellant's counsel. In the second paragraph it is alleged "that the plaintiff immediately after said injury, to wit, on the ––day of June, 1896, gave to the defendant at its home office in Indianapolis, Indiana, due notice, stating the name and address of the plaintiff, full particulars of the injury, and the name of the attending physician and an eye witness, and that said notice was accepted by the defendant as sufficient notice and without objection."

Appellant's demurrer to each paragraph of complaint was overruled. It answered in four paragraphs, the first a general denial; the second, pleading the failure of appellee to give the notice required by his policy; the third, pleading want of notice and certain other conditions of the policy; the fourth, pleading a voluntary exposure to unnecessary danger, and setting out the provisions of the policy in reference thereto. The cause was put at issue by a reply in general denial.

A trial by jury resulted in a general verdict in favor of appellee for $250. With the general verdict, answers to interrogatories were returned. Judgment was rendered in favor of appellee for the amount of the verdict.

Appellant assigns as errors the action of the court in over-

ruling its demurrer to each paragraph of the complaint; (2) in overruling its motion "for judgment on the special findings of the jury"; (3) in overruling its motion for a new trial.

In discussing the second paragraph of the complaint, appellant's counsel refers to one of the provisions of the policy in suit, in the following language: "Notice of the injury shall be given, within ten days from the happening thereof and the notice of death within thirty days, in writing, to the secretary of the association at its home office in the city of Indianapolis, Indiana, giving the name and address of the member, the date and full particulars of injury or death, with the name of the attending physician and an eye witness; any failure to give such notice shall render void all claims for such injury or death under this certificate." It is argued that this paragraph attempts to set up a parol notice, and "does not plead any facts from which the court can legally determine that the appellant was notified according to the contract." Further, that the appellee could not plead a performance of the conditions of the policy and recover under proof of a waiver of performance; no waiver being pleaded. Without determining whether the facts pleaded notified appellant according to the terms of the contract, we are of the opinion that the language of Mitchell, J., speaking for the court, in *Indiana Ins. Co.* v. *Capehart*, 108 Ind. 270, is a sufficient answer to the objections named. The language referred to is found on page 276 of the volume and is as follows: "Stipulations which do not properly amount to conditions upon which the inception or obligation of the contract depends, and which merely require that something should be done by the assured in the way of furnishing proofs or information to the insurer regarding the circumstances and origin of the fire, the nature and extent of the loss, may be and are waived when other proofs or information in respect to the same matter are accepted or received without objection by an agent

of the company who is duly authorized to act with reference to that subject. ˙ *Franklin Ins. Co.* v. *Chicago Ice Co.*, 36 Md. 102, 11 Am. Rep. 469; May Insurance, §511." This is not a question of the authority of an agent to waive the conditions of a policy. The paragraph alleges that he gave "due notice" stating full particulars of his injury to the defendant at its home office in Indianapolis, and that the notice was accepted by the defendant as sufficient notice, and without objection. See, also, *Aetna Ins. Co.* v. *Shryer*, 85 Ind. 362. The company had the right to accept any information upon the subject as sufficient. It is sufficient to plead facts constituting a waiver without in terms averring that the conditions were waived. The word "due" used in connection with the word notice, neither strengthens nor weakens the other averments of this paragraph. The allegation that the information was accepted as sufficient made the notice sufficient. The court did not err in overruling the demurrer to this paragraph.

Appellant next contends that the court erred in overruling its motion for judgment on the answers to interrogatories. In the fourth paragraph of the answer, it is averred that appellee voluntarily exposed himself to unnecessary danger, and that his injury was occasioned by reason of such voluntary exposure. The condition of the policy upon which this clause is based is as follows: "This certificate of insurance does not cover injuries nor death from any of the following causes:    *    *    *    voluntary exposure to unnecessary danger." The fourteenth interrogatory and answer thereto is as follows: "Was Robert E. Springsteen when injured voluntarily riding a bicycle against a heavy wind, and, at the time he received his injuries, not looking ahead to see where he was going? Answer. Yes." Interrogatory twenty-two is as follows: "Had Robert E. Springsteen been looking where he was going at the time he received his injuries would he not have discovered the wagon into which he ran in ample time to have turned out and avoided

it? Ans. Yes." The jury in answer to other interroga-
tories found that the plaintiff was not conscious of existing
danger when he received the injury; that he did not know-
ingly and intentionally assume a risk; that he did not inten-
tionally take chances of colliding with the wagon, knowing
of its presence; and that, in riding as stated in answer to
interrogatory fourteen, he did not voluntarily expose himself
to unnecessary danger, and in consequence thereof received
the injury of which he complains; that the injury occurred
when he was riding on a public highway on Sunday, June
21, 1896.    The interrogatories and answers thereto do not
constitute a special verdict.    At the date of the trial,
November 8, 1897, there was no statute in force in this
State authorizing a special verdict.    Interrogatories will not
control a general verdict unless they are in irreconcilable
conflict with it.    *Sponhaur* v. *Malloy*, 21 Ind. App. 287..

In *City of Ft. Wayne* v. *Patterson*, 3 Ind. App. 34, the
rule is thus stated:    "If, taking all the special findings
together, and adding to them any other fact that might have
been proved under the issues, an irreconcilable conflict with
the general verdict can be avoided, the answers to interroga-
tories will not be allowed to control."    There is no irrecon-
cilable conflict in the facts found and the general verdict,
and the court did not err in overruling appellant's motion
for judgment.

Under the third specification of the assignment of errors
counsel for appellant first discusses the twelfth reason set
out in the motion for a new trial, viz.:    That "the court
erred in admitting in evidence the testimony of the plaintiff
as to a conversation had with one Benjamin H. Prather,
wherein it was claimed that the plaintiff gave defendant
notice by parol of his alleged injuries."    Prather was the
secretary of the defendant company.    Appellant's proposi-
tion is that a written notice of the injury being provided
for in the policy, proof of said notice was incompetent.    The
second paragraph of the complaint sufficiently averred a

waiver of this provision; parol proof was therefore admissible.

Counsel'for appellant insists, under proper assignments in the motion for a new trial, that the court erred in giving of its own motion certain instructions to the jury, and in refusing to give certain instructions requested by appellant. The seventh instruction given by the court undertakes to define total disability. The appellant in effect requested the court to instruct the jury that in order to recover, appellee's injury must have been such as wholly to disable him from performing any and every kind of business pertaining to his occupation as manager of the When Clothing Store. The court refused this instruction, and instructed that appellee could recover if he was disabled to the extent that he cou.d not do any and all kinds of business pertaining to his occupation. Appellee's occupation, in the policy, was described as manager of the When Clothing Store. The condition of the policy in question is as follows: "No claims of any character shall accrue upon this contract unless it arises from physical bodily injury, through external, violent and accidental means, while this contract is in force, and then only when the injury shall, independently of all other causes, immediately and wholly disable the insured from performing any and every kind of business pertaining to his occupation as above stated." The expressions of the courts as to what constitutes total disability are not in harmony.

In *Ford* v. *United States, etc., Co.,* 148 Mass. 153, 19 N. E. 169, 1 L. R. A. 700, the insured was described in the policy as having a twofold occupation, that of leather cutter and merchant. The court held that in order to recover a weekly indemnity, he must be wholly disabled from the prosecution of any and every kind of business pertaining to the occupation under which he was insured, that is, the twofold occupation of leather cutter and merchant. The policy among other things provided that "if the insured shall sustain bodily injuries * * * which

shall * * * immediately and wholly disable and prevent him from the prosecution of any and every kind of business pertaining to the occupation under which he is insured", then he is to be indemnified in the sum of $15 per week.

In *Hutchinson* v. *Supreme Tent, etc.*, 68 Hun 355, 22 N. Y. Supp. 801, the constitution of the society in which the plaintiff held a certificate of membership provided that: "A total and permanent disability to perform or direct any kind of labor or business, or upon reaching the age of seventy years, shall entitle a member holding a certificate of endowment, so disabled or aged, to the payment of one-half of the endowment to which he would be entitled at death." The court said: "Here we have a definition or a description of the disability that would entitle the plaintiff to recover. It is not only permanent, but total, so as to be unable to perform or direct any kind of labor or business. It is not limited to the business in which the plaintiff was engaged at the time of his injury, but it is in the broadest language possible to use, a total and permanent disability 'to perform or direct any kind of labor or business.' A total disability is ordinarily one of fact, and is for the jury. It must be determined from the facts and circumstances disclosed in each case. That which would be total disability in one case might not be in another. The loss of a hand by a lawyer might interfere but slightly in the transaction of his business, or in the performance of his work. Whilst to a man who had learned a particular trade, by which he had always earned his living, and was entirely ignorant of all other trades or business, it might prove to be a much more serious disability. Ordinarily, the loss of the fingers of the hand does not constitute total disability from the performance of any kind of labor or business.".

In *Neill* v. *Order of United Friends*, 28 N. Y. Supp. 928, it was held that under a policy of a benefit society providing that, should a member become permanently dis-

abled from following his usual, or some other occupation, he should be entitled to one-half the amount of the certificate. A member who is disabled from following his usual employment is entitled to such provision of the benefit, though he is not disabled from following some other occupation. The court said: "In construing such a provision in a contract such as the one under consideration, the court will give it such meaning as will be consistent with the fair import of the words used, having reference to the purpose and object of the parties in entering into the agreement, and, as the language is that of the defendant, a construction will not be adopted which will defeat a recovery, if it is susceptible of a meaning which will permit one."

*Lyon* v. *Railway, etc., Co.,* 46 Iowa 631, was a suit upon an accident policy in which it was stipulated that the company would indemnify the assured for loss of time while totally disabled. He can not recover except upon proof of total disability. The trial court gave the following instructions: "(4.) The policy provides that the defendant will be entitled to recover for injuries resulting from accidents only while the insured was totally disabled, and prevented from the transaction of all kinds of business. But this language must be construed in a practical sense, and means inability to follow any occupation, business or pursuit in the usual way. Though he may have been able to do some parts of the accustomed work thereof, he may yet recover so long as he cannot to some extent do all parts, and engage in all such employments. The fact that he may do some light parts of the work, when he cannot engage in the work itself, to any practical extent, will not prevent a recovery. (5.) The words 'all kinds of business' should receive a practical construction, and with reference to the party insured, and, if he was qualified to engage in any business which he could do under the injury, then it would be his duty under the contract so to do; but the fact that there may be some business or occupation in which he could engage, would not

prevent a recovery unless it was an occupation or business which he was qualified to engage in as an occupation, and transact in the usual way." The Supreme Court said: "These instructions are, it seems to us, clearly erroneous. The parties must be bound by the terms of their contract. The contract of insurance provides that the defendant will indemnify the assured against loss of time while totally disabled and prevented from the transaction of all kinds of business, solely by reason of bodily injuries effected through outward and accidental violence. The fourth instruction construes the contract to mean something entirely different. The jury are directed that plaintiff may recover though he may be able to do some parts of the accustomed work pertaining to his business, so long as he cannot, to some extent, do all parts and engage in all the employments thereof. Almost total soundness and ability, instead of total disability, is made the condition of plaintiff's right to recover, and of defendant's liability. * * * This is not the proper construction of the agreement. It interpolates into it terms and conditions upon which the parties never agreed, and attaches to the words employed a meaning of which they are not susceptible."

In *Saveland* v. *Fidelity, etc., Co.*, 67 Wis. 174, 30 N. W. 237, the plaintiff who sued upon a policy insuring against accidents was by occupation a merchant. The policy provided for indemnity for injuries which should totally disable him from prosecuting any and every kind of business pertaining to his occupation for such period of continuance, the total disability not exceeding the amount stipulated nor the money value of his time during the period of continuance of total disability, not exceeding twenty-six weeks. The complaint alleged that while the plaintiff was employed in his regular business, and his earnings at the time were $100 per week, he was accidentally hit with great force by a stick of wood thrown by some party, inflicting the injury for which he sued, and was thereby wholly disabled and unable

to engage in any business for the first week thereafter and was during that time confined to his room and under the doctor's charge; that afterwards, by means of great exertion he was enabled to get into his buggy and superintend a small part of his business, but was practically disabled for a total period of twenty-six weeks. The court held that it was error to instruct the jury that the defendant was to pay the amount agreed if by the accident the plaintiff had been disabled in any way from prosecuting the business in which he was engaged and that he was entitled to recover for such time as he was rendered wholly unable to do his accustomed labor; that is, to do substantially all kinds of his accustomed labor to some extent. The court said that this instruction enlarged the risk of the company; that the plaintiff's right to recover was necessarily restricted to the time he was wholly disabled, and prevented from the prosecution of any and every kind of business pertaining to his occupation.

In *Knapp* v. *Accident Assn.*, 53 Hun 84, 6 N. Y. Supp. 57, the policy was against injuries by means of which the insured should be immediately and wholly disabled, and prevented from the prosecution of any and every kind of business pertaining to the occupation in which he received membership. The insured was described in the policy as retired. He testified at the time he made his application for insurance that he had no occupation except to amuse himself; that his income was derived from investments; that he had a shop at his house where he spent his leisure moments; that he was a stockholder and director of a wagon manufacturing company, and at times used some of the machinery of the wagon shops in connection with his amusement. In operating a buzz saw at the wagon shop, he received the injury for which he sought to recover indemnity. The wound was severe and painful; the hand was required to be carried in a sling; plaintiff was deprived of its use to a greater or less extent during the period of some

months. The court held that the injuries must be such as wholly to disable and prevent him from prosecuting any and every kind of business pertaining to his occupation, and that he was not totally disabled and prevented from prosecuting any and every kind of business pertaining to his occupation; that he might keep an eye upon his investments, collect or reinvest his income; that he was able to superintend repairs, etc., to his property generally, devote considerable attention to his family and estate.

In *Turner* v. *Fidelity, etc., Co.*, 112 Mich. 425, 70 N. W. 898, the policy provided for the payment of indemnity for injuries which should wholly disable the insured from prosecuting any and every kind of business pertaining to his occupation. The court held that the insured could recover on proof that he was in the real estate business and that he went to his office every day for a short time but was unable to do any kind of work. In the opinion, the court said: "At least, it was a question for the jury to determine, and the court submitted it in these words: 'I think that a fair interpretation of that clause is, not that he must be so disabled as to prevent him from doing anything pertaining to the business, but that he must be wholly disabled, so as to prevent him from doing any and every kind of business pertaining to his occupation; not that he might do some one thing in regard to it, but that he must be wholly disabled, so as to prevent him from doing any and every kind of business pertaining to that occupation. I submit that to you as a question of fact to find whether he was so disabled, and for what length of time, under this policy.'"

In *Lobdill* v. *Laboring Men's, etc., Assn.*, 69 Minn. 14, 71 N. W. 696, 38 L. R. A. 537, the court said: "There are a few propositions applicable to the construction of the policy under consideration, which, under the evidence are decisive of this case. The first is that total disability does not mean absolute physical inability on part of the insured to transact any kind of business pertaining to his occupation.

It is sufficient if his injuries were of such a character that common care and prudence required him to desist from the transaction of any such business so long it was reasonably necessary to effectuate a cure. This was a duty which he owed to the insurer as well as to himself. *Young* v. *Travelers Ins. Co.*, 80 Me. 244, 13 Atl. 896. The second is that under the particular terms of this policy, to wit, 'from transacting any and every kind of business pertaining to the occupation above stated' (merchant), inability to perform some kinds of business pertaining to that occupation would not constitute total disability within the meaning of the policy. For example, the occupation of a retail country merchant (as plaintiff was) embraces various departments or kinds of business, such as keeping the books, making out accounts and settling with customers; waiting on customers, and doing up their purchases in packages; also the handling and arranging of goods in the store. If an injury disabled the insured merchant from transacting one or more of these branches of the business, but left him able to transact others with due regard to his health, he would not be totally disabled within the meaning of this policy. But the mere fact that he might be able, with due regard to his health, to occasionally perform some single and trivial act connected with some kind of business pertaining to his occupation as a merchant would not render his disability partial instead of total, provided he was unable, substantially or to some material extent, to transact any kind of business pertaining to such occupation."

In *Young* v. *Travelers Ins. Co.*, 80 Me. 244, the policy provided that if the insured shall sustain bodily injuries, which shall wholly disable and prevent him from the prosecution of any and every kind of business pertaining to the occupation under which he is insured, certain indemnity should be paid him. The court held that in order to entitle the insured to recover that indemnity, he was not required to prove that his injury disabled him to such an extent that

he had no physical ability to do anything in the prosecution of his business, but that it was sufficient if he satisfied the jury that his injury was of such character and to such an extent that he was not able to do all the substantial acts necessary to be done in the prosecution of his business.

In *Wolcott* v. *United, etc., Assn.*, 8 N. Y. Supp. 263, in an action on a policy providing indemnity during total disability, a physician holding the policy was held to be entitled to pay for time when he was confined to his bed by an accident, though during that time he gave occasional examinations, and prescribed for patients who came to his bed-side, and reached for medicines for them without leaving his bed. The court said: "Total disability must, of the necessity of the case, be a relative matter, and must depend largely upon the occupation and employment in which the party insured is engaged. One can readily understand how a person who labors with his hands would be totally disabled only when he cannot labor at all. But the same rule would not apply to the case of a professional man, whose duties require the activity of the brain, and which is not necessarily impaired by serious physical injury. If a person engaged in the general practice of medicine and surgery is unable to go about his business, enter his office, and make calls upon any of his patients, but is confined to the bed, as in this instance, and enabled only to exercise his mind on occasional applications to him for advice, he may be said to be totally disabled, within the meaning of the provisions of this policy."

In *Hohn* v. *Inter-State Casualty Co.*, 115 Mich. 79, 72 N. W. 1105, the policy contained this provision: "If such injuries, * * *, wholly disable and prevent the insured from performing any and every kind of duty pertaining to his occupation, the company will pay" etc. The insured, a barber, after receiving the injury on account of which he sued, went to his shop and attempted to do some work, but he suffered such pain that he fainted away and was sent home in a hack. During the week he was some

better and visited his shop, but was suffering pain all the time, worked a little, but was unable to perform all of his duties because of pain, and after that he was compelled to remain in bed for some time. The court held that he was totally disabled within the meaning of the policy; the court citing in the opinion, *Young* v. *Travelers Ins. Co.*, *supra; Lobdill* v. *Laboring Mens, etc., Assn.*, *supra; Turner* v. *Casualty Co.*, *supra*.

Bliss on Life Insurance, at page 723, §403, cited by appellant, gives the interpretation of numerous decisions as to what is being disabled from usual employment without discussing them.

May on Insurance, §522, cited by appellant, says, citing *Hooper* v. *Accident, etc., Assn.*, 5 H. & N. 546, that "wholly disabled" is equivalent to "quite disabled" and a man is so unless he can do what he is called upon to do in the ordinary course of his business. It is not the same thing as to do any part of his business, though the insured "may do certain parts of his accustomed work, and engage in some of his usual employments, he may yet recover, so long as he cannot to some extent do all parts, and engage in all such employments," citing several cases in support of said proposition.

Joyce on Insurance, at §3031, in referring to certain cases most of which are hereinbefore set out, says: "Some of the cases are certainly open to criticism, in that the object and purposes of the insurance contract are ignored and the rules of construction strained. The general purpose of such clauses is to furnish an indemnity to assured for the loss of time by reason of accident or injury which prevents him from prosecuting his business, and it would seem that this ought to refer to his inability to perform substantially the duties which are necessary to be done in the business to which the contract refers, an absolute physical inability ought not to be meant in all cases, for the injury might be of such a character as that common care and prudence would preclude the prosecution of said business."

Upon the clause of the policy in question, the court in the cause before us instructed the jury as follows: "(7) This paragraph sets out as an exhibit a copy of the policy, and in said policy it is provided that no claim shall ever accrue unless it arises from physical bodily injury through external, violent, and accidental means, and then only when the injury shall, independently of all other causes, immediately and wholly disable the insured from performing any and every kind of business pertaining to his occupation as manager of the When Clothing Company. I instruct you that as a matter of law the meaning of this provision of the policy is not that the plaintiff must have been disabled so as to prevent him from doing anything whatsoever pertaining to his said occupation, but that he must have been disabled only to the extent that he could not do any and every kind of business pertaining to his said occupation. He might be able to do a part and not be able to do all, and because he was not able to do all be deemed to be wholly disabled from doing any and every kind, provided, of course, that he was so disabled as to be prevented from doing substantially all the necessary and material things in said occupation requiring his own exertions in substantially his customary and usual manner of so doing. He might be able to do personally minor and trivial things, not requiring much time or physical labor, and through others, acting under his direction, to do the heavier things requiring physical exertion, which in the ordinary and proper performance of his duties he had heretofore done personally, and yet because of inability to do these heavier things and more material things personally, be said to be wholly disabled within the terms of his policy; provided, further, that the things he was unable to personally do constitute substantially all of his said occupation."

We make no attempt to harmonize the decisions cited. But in view of the liberal rule of construction, which holds that, where the language used in a policy of insurance is capable of two constructions, the one most favorable to

the assured must be given,—which rule has been adopted in this State,—the instruction fairly stated the law as announced by the weight of authority. *Indiana, etc., Ins. Co.* v. *Rundell*, 7 Ind. App. 426; *Supreme Lodge* v. *Edwards*, 15 Ind. App. 524; *Globe Ins. Co.* v. *Helwig*, 13 Ind. App. 539; *Bank* v. *Insurance Co.*, 95 U. S. 673.

We have read the instructions requested by appellant and refused by the court. So far as they state the law, they were substantially covered by those given. The question of whether appellee voluntarily exposed himself to unnecessary danger was properly submitted under an aptly worded instruction to the jury, as was the question whether appellee gave a notice of his injury to the company which was accepted and acted upon by it. The evidence shows that the claim of appellee was not rejected for want of notice, but upon the ground that his disability was not total within the meaning of the policy.

That appellee was guilty of negligence contributing to his injury, there can be no question, but the jury found that he had not knowledge of the danger. This court, in *Conboy* v. *Railway, etc., Assn.*, 17 Ind. App. 62, by Black, J., said: "Giving the words definitions, and the language a meaning most unfavorable to the insurer and most favorable to the insured, the exception may be construed as contemplating knowledge on the part of the insured of the existence of the danger or peril, and an encountering of it by him willingly. We think that the facts alleged do not show that the death of the insured was within the exception. They indicate an accidental death from a suddenly encountered danger. It is not shown that the insured consciously and intentionally exposed himself to danger, or that he presumed or dared to run a risk of peril. It does not follow because an act was voluntary, that the exposure was voluntary." And in *Keene* v. *Accident Assn.*, 161 Mass. 149, 36 N. E. 891, 892, it was said: "A voluntary exposure to necessary danger is not forbidden, nor an involuntary exposure to unnecessary danger. The policy recognizes that

there are some dangers which it is necessary to encounter, as, for example, where there is a chance to rescue persons in deadly peril. See *Tucker* v. *Mutual Benefit Co.*, 50 Hun 50, 4 N. Y. Supp. 505. There are other dangers which one usually need not encounter if he knows of their existence long enough beforehand, as, for example, the danger from a runaway horse or a coming car; and a merely inadvertent and unintentional exposure to a danger of this kind is not voluntary, but involuntary. A voluntary exposure to unnecessary danger implies a conscious intentional exposure; something which one is consciously willing to take the risk of. By taking a policy of insurance against accidents, one naturally understands that he is to be indemnified against accidents resulting in whole or in part from his own inadvertence."

We have carefully examined the record, passed upon the controlling questions presented, and find no error for which the judgment should be reversed.

Judgment affirmed.